UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALI SALEM,<br><br>                                    Plaintiff,<br><br>          -v-<br><br>NEW YORK UNIVERSITY, RAQUEL COOPER, individually and on behalf of New York University, and PETER VOLTZ, individually and as Dean for Undergraduate and Graduate Academics, NYU Tandon School of Engineering,<br><br>                                    Defendants. | CIVIL ACTION NO.: 22 Civ. 5112 (VEC) (SLC)<br><br>**REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE VALERIE E. CAPRONI**, United States District Judge:

## I. INTRODUCTION

Plaintiff Ali Salem ("Mr. Salem"), proceeding pro se, has sued Defendants New York University ("NYU"), Raquel Cooper ("Cooper"), and Peter Voltz ("Voltz," with NYU and Cooper, "Defendants"), alleging national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL").  (ECF No. 1 (the "Complaint")).  Before the Court is Defendants' motion to dismiss (ECF No. 11 (the "Motion")), which Mr. Salem has opposed.  (ECF No. 18 (the "Opposition")).  For the reasons set forth below, I respectfully recommend that the Motion be GRANTED but that Mr. Salem be granted leave to amend to address the deficiencies noted in this Report and Recommendation.

## II. BACKGROUND

### A. Factual Background

This factual summary is drawn from Mr. Salem's Complaint and Opposition, the allegations of which are presumed true for purposes of deciding the Motion.  See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119–20 (2d Cir. 2013); Rothbein v. City of New York, No. 18 Civ. 5106 (VEC), 2019 WL 977878, at *1 (S.D.N.Y. Feb. 28, 2019); see also Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion.").[1]

#### 1. The Parties

Mr. Salem is "an Iranian Muslim" who received bachelor's and master's degrees in aerospace engineering from Sharif University of Technology.  (ECF No. 1 ¶¶ 5, 14).  He worked "on a revolutionary Covid Fighter Robot that helps to kill germs and bacteria[,]" holds three United States patents, and "invented the world's first combo aerial and terrestrial UV-C sanitizer robot to help fight against Covid-19."  (Id. ¶ 14).

NYU is a private university that receives federal, state, and local government grants.  (ECF No. 1 ¶¶ 10–11).  Voltz is NYU's Associate Dean for undergraduate and graduate academics.  (Id. ¶ 12).  Cooper is NYU's Senior Director of Graduate Academics.  (Id. ¶ 13).

#### 2. Mr. Salem's Education at NYU

Mr. Salem studied at NYU for two semesters, fall 2018 and spring 2019, and carried an overall grade point average ("GPA") of 2.611.  (ECF No. 1 ¶ 16).  Although NYU's policies afforded

---

[1] All internal citations and quotation marks are omitted from case citations unless otherwise noted.

him "an opportunity to bring his GPA over a 3.0," Cooper and Voltz "compelled" him to "transfer his records to another school."  (Id. ¶ 17; see ECF No. 18 at 6 (asserting that NYU's policy grants students three semesters to raise GPA above 3.0)).  Despite NYU's Bursar's Office placing Mr. Salem on an installment tuition payment plan, Voltz also "compelled Mr. Salem to pay" his tuition balance in full and placed his account "on hold" without authorization.  (ECF No. 1 ¶ 18).  Mr. Salem alleges "[u]pon information and belief" that Voltz had "never on any prior occasion placed a hold on" the account of another student who was required to pay their outstanding tuition balance to continue their studies.  (Id. ¶ 19).

Mr. Salem reapplied to NYU for the Spring 2021 semester, "but was rejected due to his GPA of 2.6."  (ECF No. 1 ¶ 21).  He alleges that "D.S.," a "similarly situated . . . undergraduate student from CUNY"[2] who was a "non-Iranian" United States citizen "was granted a master[s] admission to" NYU's Tandon Robotics program for the Fall 2021 semester.  (Id.; see ECF No. 18 at 6 (asserting that D.S. was granted "conditional" admission)).  Voltz told Mr. Salem "that he wanted to see [his] GPA/Academic Record improve at another school to gain readmission[,]" which Mr. Salem deemed to be "a very exceptional expectation."  (ECF No. 1 ¶ 22).  Mr. Salem then enrolled in an electrical engineering Ph.D. program at CUNY, where he carried a GPA of 3.9.  (Id. ¶ 23).  Mr. Salem reapplied to NYU for the Fall 2022 semester, but on January 28, 2022, was rejected.  (Id. ¶¶ 24–25).  Mr. Salem alleges that the rejection letter shows that Cooper and Voltz rejected him "without sending [his] application to the Electrical Engineering Department."  (Id. ¶ 25).

[2] City University of New York.  See CUNY, https://www.cuny.edu/ (last visited Apr. 27, 2023).

###### 3.  Interactions Between Mr. Salem and Cooper

Mr. Salem alleges that "[on] different occasions" in October 2019, Cooper stopped him in the hallway and "disclose[d] his situation/academic information" without his consent. (ECF No. 1 ¶ 26).  "After talking bluntly in the hallway," Cooper invited Mr. Salem to speak in her office, but then said, "I do not like to kick you out of my office, but I have to[,]" which he found "surprisingly offensive" and a violation of his "right to educational privacy[.]"  (Id.)  Mr. Salem reported Cooper's conduct "to NYU but nothing changed."  (Id.)

At some point—possibly in October 2019—Mr. Salem went on medical leave, from which was "cleared" to return in January 2020.  (ECF No. 18 at 6).  On an unspecified date when Mr. Salem was on campus for a meeting with his advisor, Cooper "attempted" to direct NYU's campus security, who "knew" him "for [his] honesty and integrity," to prevent him from "enter[ing] the building during his medical leave."  (ECF No. 1 ¶ 27).  When Mr. Salem returned to NYU to register for the Spring 2020 semester, Cooper met him at the "information desk and revealed [his] academic situation, medical leave[,] and financial situation in the presence of security guards, students, and staff without [his] consent[.]"  (Id. ¶ 28).  Cooper told Mr. Salem, "we helped you to adjust your status[,]" i.e., she decided to terminate his "studies at NYU" as of October 2019.  (Id.)  Mr. Salem also alleges that on February 13, 2020, Cooper "filed a false report that [he was] a threat to the school[,]" as a result of which security personnel insulted him, threatened to call the police, and issued a "trespass warning."  (Id. ¶ 29; see ECF No. 18 at 7).

#### B.  Procedural Background

On June 17, 2022, Mr. Salem filed the Complaint, asserting five claims: (i) national origin discrimination under Title VI (the "Title VI Claim"); (ii) national origin discrimination under

Section 1981 (the "Section 1981 Claim"); (iii) negligent supervision against NYU only (the "Negligence Claim"); (iv) national origin discrimination under the NYSHRL (the "NYSHRL Claim"); and (v) national origin discrimination under the NYCHRL (the "NYCHRL Claim").   (ECF No. 1 ¶¶ 31–59).   On September 7, 2022, Defendants filed the Motion.   (ECF Nos. 11–12).   On October 14, 2022, Mr. Salem filed the Opposition, in which he stated that he withdrew the Section 1981 Claim and all claims against Cooper and Voltz. (ECF No. 18 at 8 n.2).   On November 4, 2022, Defendants filed a reply.   (ECF No. 20). The Honorable Valerie E. Caproni has referred the Motion for this Report and Recommendation. (ECF No. 6).

### III. <u>DISCUSSION</u>

#### A.  <u>Legal Standard for Motion to Dismiss</u>

In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

To survive a motion to dismiss, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"   <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).   In evaluating a motion to dismiss, the Court "accept[s] all facts alleged in the

complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." Sanderson v. Leg Apparel LLC, No. 19 Civ. 8423 (GHW), 2020 WL 7342742, at *3 (S.D.N.Y. Dec. 14, 2020) (citing Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)).  The Court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (quoting Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)).  "[A] complaint that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss." Id. (quoting Iqbal, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting DeJesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 87–88 (2d. Cir. 2013)).  For purposes of Rule 12(b)(6), "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

In deciding a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006).  Nonetheless, "a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face." Gottesfeld v. Anderson, No. 18 Civ. 10836 (PGG), 2020 WL 1082590, at *5 (S.D.N.Y. Mar. 6, 2020) (citing Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011)).  Despite the obligation "to draw the most favorable inferences" from a complaint, the Court "cannot invent factual allegations that [a pro se plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "The Court need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the

complaint.'" <u>Tsinberg v. City of New York</u>, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y.

Mar. 25, 2021) (quoting <u>Fisk v. Letterman</u>, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

### B. **Withdrawn Claims**

In the Opposition, Mr. Salem states that he "withdraws" the Section 1981 Claim, the

Negligence Claim, and all claims against Cooper and Voltz.  (ECF No. 18 at 8 n.2).  Mr. Salem

having "unequivocally confirmed, in writing, his desire to drop" these claims, I respectfully

recommend that these claims be DISMISSED WITH PREJUDICE.  <u>Allen v. N.Y.C. Housing Auth.</u>,

No. 10 Civ. 168 (CM) (DF), 2012 WL 4794590, at *4 (S.D.N.Y. Sept. 11, 2012) (dismissing

abandoned claims with prejudice); <u>accord</u> <u>Marks v. Nat'l Commc'ns Ass'n, Inc.</u>, 72 F. Supp. 2d

322, 328 n.6 (S.D.N.Y. 1999); <u>but</u> <u>see</u> <u>Radcliffe v. Wright</u>, No. 16 Civ. 9511 (GHW), 2018 WL

3187338, at *2 (S.D.N.Y. June 28, 2018) (dismissing withdrawn claim without prejudice); <u>Douglas</u>

<u>v. Abrams Children Books</u>, No. 13 Civ. 2613 (VSB), 2014 WL 12909009, at *3 (S.D.N.Y. Sept. 26,

2014) (dismissing without prejudice where plaintiff "did not specify whether he sought to

withdraw [his] claims with or without prejudice").

### C. **Title VI Claim**[3]

In support of his Title VI Claim, Mr. Salem contends that NYU was "deliberately indifferent

and subject[ed] him to a hostile educational environment and disparate treatment" based on his

Iranian citizenship.  (ECF No. 1 ¶ 33–34).  He asserts that Defendants' actions deprived him of "a

supportive, scholastic environment free of discrimination and harassment" and "the ability to

complete his education."  (<u>Id.</u> ¶ 35).  In the Motion, Defendants argue that Mr. Salem makes only

---

[3] Given the recommendation that the claims against Cooper and Voltz be dismissed with prejudice, the remainder of the Court's analysis addresses the sufficiency of Mr. Salem's allegations against NYU, the only remaining Defendant.

conclusory allegations and has failed to allege any facts from which the Court could infer NYU's discriminatory intent or motivation.  (ECF No. 12 at 10).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To establish a Title VI claim, a "plaintiff must show, <u>inter alia</u>, that the defendant discriminated against him on the basis of [national origin], that the discrimination was intentionally, and that the discrimination was a substantial or motivating factor for the defendant's actions."  <u>Tolbert v. Queens Coll.</u>, 242 F.3d 58, 69 (2d Cir. 2001).

Title VI claims "are subject to the burden-shifting framework" that the United States Supreme Court established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Johnson v. N.Y. Univ.</u>, No. 17 Civ. 6184 (VEC) (GWG), 2018 WL 3966703, at *6 (S.D.N.Y. Aug. 20, 2018), <u>adopted by</u>, 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018); <u>see</u> <u>Lopez v. Webster Cent. Sch. Dist.</u>, 682 F. Supp. 2d 274, 279 (W.D.N.Y. 2010) ("Courts have applied the familiar <u>McDonnell Douglas</u> burden-shifting analysis to cases arising under Title VI."); <u>accord</u> <u>Koumantaros v. City Univ. of N.Y.</u>, No. 03 Civ. 10170 (GEL), 2007 WL 840115, at *7 n.10 (S.D.N.Y. Mar. 19, 2007).  The first step of that framework requires a plaintiff to "successfully assert[] a prima facie case of [] discrimination against" the defendant.  <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 123 (2d Cir. 2004).

To establish a prima facie case of national origin discrimination in an educational setting, a plaintiff must allege either "direct evidence of discriminatory conduct," or, absent such evidence, that "(1) []he is a member of a protected class; (2) []he suffered an adverse action in

pursuit of h[is] education by defendant; (3) []he was treated differently from similarly situated students who are not members of the protected class; and (4) []he was qualified to continue in h[is] educational pursuit." Koumantoros, 2007 WL 840115, at *8. If a plaintiff states a prima facie case, "defendants have the burden of showing a legitimate, nondiscriminatory reason for their actions." Back, 365 F.3d at 123. If the defendant does so, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The Court concludes Mr. Salem has failed to provide "plausible support [for] a minimal inference of discriminatory motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84. At most, he has pled "facts that are 'merely consistent with' [NYU's] liability," which "stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Mr. Salem alleges that he is an Iranian Muslim, and that he applied for and was denied readmission to NYU. (ECF No. 1 ¶¶ 5, 9, 21, 24–25). What he has not alleged, however, is "some basis on which this Court may infer that the reason he was denied readmission was because of his [national origin] . . . ." Johnson, 2018 WL 3966703, at *7. Absent such allegations, Mr. Salem has only pleaded facts that are "merely consistent with" NYU's liability under Title VI. Twombly, 550 U.S. at 554, 557; see Bhatnagar v. Parsons Sch. of Design, No. 20 Civ. 2321 (LGS), 2021 WL 2333243, at *3 (S.D.N.Y. June 8, 2021) ("Although the Complaint's factual allegations do not rule out a discriminatory motive, they do not 'nudge [the Complaint's] claims across the line from conceivable to plausible.") (quoting E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014)).

First, Mr. Salem has not advanced any non-conclusory allegation that NYU denied his applications for readmission "based on" his national origin.  Johnson, 2018 WL 3966703, at *7. He attempts to show discrimination in the readmission process by referencing another student, D.S., who was a United States citizen, had a GPA of 2.5, and "was granted a master[s] admission to NYU Tandon Robotics program for Fall 2021."  (ECF No. 1 ¶ 21).  "Although evidence of disparate treatment may suffice to support an inference of discrimination," Johnson, 2018 WL 3966703, at *7, "[a] plaintiff relying on disparate treatment evidence must show [that] []he was similarly situated in all material respects to the individuals with whom []he seeks to compare h[im]self."  Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."  Graham v. Long Is. R.R., 230 F.3d 34, 40 (2d Cir. 2000).  At this stage, despite drawing all inferences in Mr. Salem's favor, the Court cannot reasonably infer that NYU discriminated against him based on his national origin.  Most importantly, the Complaint does not allege that D.S. is a student who previously attended NYU, was terminated due to poor academic performance, and re-applied for admission to the same program to which Mr. Salem applied.  The Court observes that there is a measurable difference between an applicant reapplying to NYU after being terminated for a low GPA, and an applicant with a low GPA seeking admission for the first time.  Therefore, Mr. Salem's assertion that D.S. is a "similarly situated" comparator "do[es] not support an inference of discrimination."  Johnson, 2018 WL 3966703, at *7 (holding that plaintiff's comparator allegations did not support inference of race or sex discrimination where there was "obviously an enormous difference" between plaintiff and the suggested comparators); see Bhatnagar, 2021

WL 2333243, at *4 (finding that plaintiff failed to allege "facts that plausibly support finding [him] similarly situated to the students who received thesis extensions").

Second, none of the alleged statements by Cooper or Voltz supports an inference of discriminatory intent or motivation based on Mr. Salem's national origin.  Mr. Salem alleges that Cooper discussed his academic status in the hallway, said that she did not want to "kick" him out of her office, and "filed a false report" that he was "a threat to the school."  (ECF No. 1 ¶¶ 27–29).  Mr. Salem does not allege any particular statements by Voltz, only that Voltz "compelled" him to pay his full tuition balance, placed his "account on additional hold[,]" and joined with Cooper in "compel[ing] [him] to transfer his records to another school."  (Id. ¶¶ 17–18).  None of these statements, however, contains any reference to Mr. Salem's national origin, and instead are "conclusory, isolated, and unspecified statements [that] cannot provide a rational basis for inferring discriminatory intent or motivation, and a claim based on such allegations cannot survive a motion to dismiss."  Aoutif v. City Univ. of N.Y., No. 05 Civ. 496 (ILG), 2005 WL 3334277, at *4 (E.D.N.Y. Dec. 8, 2005) (granting motion to dismiss Title VI claim); see Bhatnagar, 2021 WL 2333243, at *4 (finding that any inference of motivation based on national origin and skin color was conclusory and that the "Complaint contain[ed] no factual allegations that ma[de] this inference of discriminatory intent plausible[]").  Similarly, Mr. Salem's bare assertion that he "reported [Cooper's] misconducts to NYU but nothing changed[,]" (ECF No. 1 ¶ 26), fails to support a plausible inference that he notified NYU authorities of any alleged national origin discrimination, or that those authorities knew of the alleged discrimination and failed to respond.  "In the absence of such notice, [Mr. Salem] has not provided an opportunity for an adequate response by [NYU], and [his] Title VI claim cannot survive a motion to dismiss."  Aoutif, 2005 WL

3334277, at *4; see Crandell v. N.Y. Coll. of Osteopathic med., 87 F. Supp. 2d 304, 320 (S.D.N.Y. 2000) (explaining that an educational "institution must have actual knowledge of at least some incidents of harassment in order for liability to attach[]").

Ultimately, Mr. Salem asks the Court to infer that NYU discriminated against him based on his national origin "based merely on the fact that he was the subject of an adverse action[,]" which is a "logic [that] has been routinely rejected" by courts in the Second Circuit.  Johnson, 2018 WL 3966703, at *8 (collecting cases).  Because Mr. Salem has failed to allege facts supporting a minimal inference of discrimination, he has failed to state a plausible claim for national origin discrimination under Title VI, and I therefore respectfully that Defendants' Motion be GRANTED as to the Title VI Claim.[4]

### D. **NYSHRL and NYCHRL Claims**

Mr. Salem predicates his NYSHRL and NYCHRL Claims on the same conduct as his Title VI Claim.  (ECF No. 1 ¶¶ 52–59).  As an initial matter, the Court observes that the diversity of citizenship requirement in 28 U.S.C. § 1332 is not satisfied here because Mr. Salem alleges, "on information and belief," that "all [D]efendants reside in the State of New York."  (Id. ¶ 7). See City of Indianapolis v. Chase Nat'l Bank of N.Y., 314 U.S. 63, 69 (1941) (explaining that diversity jurisdiction requires "controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side").

---

[4] The Court notes that the introductory paragraphs of the Complaint also include passing references to religious discrimination (see ECF No. 1 ¶¶ 2, 4), although, other than alleging that he is Muslim (id. ¶ 5), Mr. Salem does not otherwise detail the basis for a religious discrimination claim.  (See id. ¶¶ 31–59).  To the extent Mr. Salem intended to assert a claim for religious discrimination, the Court finds that this claim fails for the same reason as his national-origin claim, i.e., because Mr. Salem has failed to allege facts supporting a minimal inference of discrimination.

While the Court has jurisdiction over Mr. Salem's Title VI Claim pursuant to 28 U.S.C. § 1331, "the Court's authority to hear [his] state law claims is premised on its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)," Johnson, 2018 WL 3966703, at *9, as Mr. Salem acknowledges. (ECF No. 1 ¶ 6).  Section 1367(a) provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  A district court may, however, "decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has explained that:

> in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims.

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); accord Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).  At this early stage in this action, I respectfully recommend that the Court decline to exercise jurisdiction over Mr. Salem's NYSHRL and NYCHRL Claims. See Johnson, 2018 WL 3966703, at *9 (recommending abstention from supplemental jurisdiction over NYSHRL, NYCHRL, and other state law claims), adopted by, 2018 WL 4908108, at *7; accord Manolov v. Borough of Manh. Commt'y Coll., 952 F. Supp. 2d 522, 527, 536-37 (S.D.N.Y. 2013); Sanders v. Grenadier Realty, Inc., No. 08 Civ. 3920 (WHP), 2009 WL 1270226, at *3 (S.D.N.Y. May 6, 2009).[5]

---

[5] Were the Court to consider the merits of Mr. Salem's NYSHRL and NYCHRL Claims, the Court would find that they fail to allege a plausible claim for the same reasons as the Title VI Claim.  See Bhatnagar, 2021 WL 2333243, at *4 (dismissing NYCHRL claims on same basis as Title VI claims).

### E. **Leave to Amend**

Although Mr. Salem does not expressly request leave to amend his Complaint, I respectfully recommend that leave be granted. "Leave to amend should be 'freely give[n] . . . when justice so requires.'" Trujillo, 2016 WL 10703308, at *21 (quoting Fed. R. Civ. P. 15(a)(2)); see Bloomberg v. N.Y.C. Dep't of Educ., 410 F. Supp. 3d 608, 628 (S.D.N.Y. 2019) (permitting amended complaint after granting motion to dismiss). The Second Circuit recognizes that "the 'liberal spirit' of the Federal Rule of Civil Procedure 15 embodies a 'strong preference for resolving disputes on the merits.'" Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., No. 15 Civ. 7710 (ER), 2017 WL 1194686, at *14 (S.D.N.Y. Mar. 30, 2017) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190–91 (2d Cir. 2015)).

"District courts 'ha[ve] broad discretion in determining whether to grant leave to amend[.]'" Trujillo, 2016 WL 10703308, at *21 (quoting Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000)). District courts may properly deny leave to amend if there exists "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008).

Given Mr. Salem's pro se status, I respectfully recommend that he be granted leave to amend the claims he has inadequately pled, i.e., the Title VI, NYSHRL, and NYCHRL Claims against NYU. See Bhatnagar, 2021 WL 2333243, at *5 (granting leave to replead race and national origin discrimination claims under Title VI, the NYSHRL, and NYCHRL); Johnson, 2018 WL 4908108, at *7 (granting plaintiff leave to amend Title VI, NYSHRL, and NYCHRL claims).

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendants' Motion be GRANTED as follows:

1. The Section 1981 and Negligence Claims be DISMISSED WITH PREJUDICE;

2. All claims against Cooper and Voltz be DISMISSED WITH PREJUDICE;

3. The Title VI Claim, the NYSHRL, and the NYCHRL Claims against NYU be DISMISSED WITHOUT PREJUDICE and with leave to amend to address the deficiencies set forth above.

Dated:      New York, New York
            April 28, 2023

SARAH L. CAVE
United States Magistrate Judge

*                         *                         *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Mr. Salem does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Defendants' counsel.  See Local Civ. R. 7.2.