UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALI SALEM,  Plaintiff,  -v-  NEW YORK UNIVERSITY,  Defendant. | CIVIL ACTION NO.: 22 Civ. 5112 (VEC) (SLC)  **REPORT AND RECOMMENDATION** |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE VALERIE E. CAPRONI**, United States District Judge:

## I.INTRODUCTION

Before the Court is the motion of pro se Plaintiff Ali Salem ("Mr. Salem") for leave to amend his claims against Defendant New York University ("NYU") for national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"). (ECF No. 28 (the "Motion")). In his proposed amended complaint (ECF No. 28-1 (the "PAC")), Mr. Salem seeks to remedy the deficiencies that the Court highlighted in its report and recommendation dated April 28, 2023 (ECF No. 21 (the "R&R")), which the Honorable Valerie E. Caproni adopted. (ECF No. 22). See Salem v. N.Y. Univ., No. 22 Civ. 5112 (VEC) (SLC), 2023 WL 3509832 (S.D.N.Y. Apr. 28, 2023) ("Salem I"), adopted by, 2023 WL 3506402 (S.D.N.Y. May 17, 2023) ("Salem II"). Mr. Salem also seeks to add as a Defendant Ivan Selesnick ("Selesnick"), Chair of the Electrical and Computer Engineering ("ECE") Department of NYU's Tandon School of Engineering ("Tandon"), and to add retaliation claims under Title VI, the NYSHRL, and the

NYCHRL. (ECF No. 28-1 at 1). For the reasons set forth below, I respectfully recommend that the Motion be DENIED.

## II. BACKGROUND

### A. Factual Background

This factual summary is drawn from Mr. Salem's PAC, the allegations of which are presumed true for purposes of deciding the Motion. See Fin. Gaur. Ins. Co. v. Putnam Adv. Co., 783 F.3d 395, 398 (2d Cir. 2015); Nkansah v. United States, No. 18 Civ. 10230 (PAC) (SLC), 2021 WL 5910647, at *1 n.1 (S.D.N.Y. Aug. 30, 2021), adopted by, 2021 WL 5493214 (S.D.N.Y. Nov. 23, 2021).[1]

#### 1. The Parties

Mr. Salem is an Iranian Muslim who received a bachelor's degree in aerospace engineering from Sharif University of Technology and a master's degree in electrical engineering from the City University of New York ("CUNY"). (ECF No. 28-1 ¶¶ 5, 12). He worked "on a revolutionary Covid Fighter Robot that helps to kill germs and bacteria[,]" holds three United States patents, and "invented the world's first combo aerial and terrestrial UV-C sanitizer robot to help fight against Covid-19." (Id. ¶ 12). He was "a full fellowship PhD student in Mechanical Engineering and Electrical Engineering at the University of Illinois Chicago and [CUNY]." (Id. ¶ 13).

NYU is a private university that receives federal, state, and local government grants. (ECF No. 28-1 ¶¶ 10–11). Selesnick is the Chair of the ECE Department at Tandon. (Id. ¶ 22).

---

[1] All internal citations and quotation marks are omitted from case citations unless otherwise noted.

## 2.  Mr. Salem's Education at NYU

Mr. Salem studied at NYU for two semesters, fall 2018 and spring 2019, and carried an overall grade point average ("GPA") of 2.611.  (ECF No. 28-1 ¶ 14).

Mr. Salem alleges that "[on] different occasions" in October 2019, NYU's Senior Director of Graduate Academics, Raquel Cooper ("Cooper"), stopped him in the hallway and "disclose[d] his situation/academic information" without his consent.  (ECF No. 28-1 ¶ 32).  "After talking bluntly in the hallway," Cooper invited Mr. Salem to speak in her office, but then said, "I do not like to kick you out of my office, but I have to[,]" which he found "surprisingly offensive" and a violation of his "right to educational privacy[.]"  (Id.)

At some point—possibly in October 2019—Mr. Salem went on medical leave, from which was "cleared" to return in January 2020, "but [D]efendants extended his restrictions and [kept] the hold on his account unlawfully and report[ed] him to security . . . ."  (ECF No. 28-1 ¶ 27).  On February 13, 2020, Cooper "filed a false report" stating that Mr. Salem was "a threat to the school[,]" which resulted in campus security "insult[ing]" him, "threaten[ing] to call the police[,]" and issuing a "trespass warning[.]"  (Id. ¶¶ 35, 36).  Cooper "also disclosed his academic information in the presence of other students and staff."  (Id. ¶¶ 34, 36).

Although NYU's policies afforded him "an opportunity to bring his GPA over a 3.0," Cooper and Peter Voltz ("Voltz"), NYU's Associate Dean for Undergraduate and Graduate Academics, "compelled" him to "transfer his records to another school."  (ECF No. 28-1 ¶¶ 15, 28; see ECF No. 1 ¶¶ 12–13).[2]  Although NYU's Bursar's Office placed Mr. Salem on an installment tuition

---

[2] Cooper and Voltz are no longer Defendants in this action, all claims against them having been dismissed with prejudice.  See Salem II, 2023 WL 3506402, at *1.

payment plan, Voltz "demand[ed]" that Mr. Salem pay his tuition balance in full and placed his account "on hold" without authorization.  (ECF No. 28-1 ¶¶ 16, 25).  According to "one of the staff at [the] Bursar['s] office," another student "with [an] outstanding balance of roughly $14,000 [was] gradually paying and the student [was] Ok, [with] no hold on his account."  (Id. ¶ 17).  Mr. Salem alleges that Voltz "prevented [him from] getting time and making arrangements for payment without losing his studies."  (Id. ¶ 18).  Mr. Salem alleges "[u]pon information and belief" that Voltz has not previously "placed a hold on other students['] accounts demanding unpaid tuition be fully paid before letting them [] continue their studies[.]"  (Id. ¶ 25).

While Mr. Salem was in Voltz's office on an undated occasion, Voltz told a Student Affairs staffer on the telephone that Mr. Salem "is Iranian."  (ECF No. 28-1 ¶ 19).  Voltz "knew that getting a visa for Iranian students is difficult[,]" and Mr. Salem alleges that "Defendants tried to weaponize this visa difficulty against [Mr. Salem] as the base [sic] of imposing their terms and discriminatory treatments."  (Id.)  Mr. Salem's mentor, Prof. Khorrami, "mentioned" to him that "Defendants sent an email to [Prof. Khorrami] attempting to dissuade [him] from [] cooperating with" Mr. Salem, which "interfere[d with] his future communications with faculty members."  (Id. ¶ 20).

Selesnick told Mr. Salem that Tandon had "an agreement with U[S]CIS [United States Citizenship and Immigration Services] to not keep master's students for more than 2 years in school."  (ECF No. 28-1 ¶ 22).  Mr. Salem claims that "this assertion [was] not accurate" and he was never informed "about this unknown and uncovered policy."  (Id.)  Mr. Salem received "an email and instruction from the International Office," the date of which he does not provide, informing him that "an updated I-20" had been issued and instructing him to come to that office

to retrieve the I-20.  (Id. ¶ 23).[3]  When Mr. Salem went to campus to collect the I-20, Cooper saw

him, asked him "why did you come here[?]" and informed Voltz.  (Id.; see id. ¶ 33).  Voltz sent

Mr. Salem the following email:

> I heard that you have been trying to come to campus.  Please remember that
> according to your medical leave notice attached[,] you are not to have access to
> any of our facilities while on leave.  You should take this very seriously because if
> you try to get on cam[pus] again . . . while on leave you could be dismissed from
> Tandon completely.

(Id. ¶ 24).  Mr. Salem alleges "[u]pon information and belief" that "no other student [on] medical

leave was threatened with dismissal if the student was seen on campus."  (Id. ¶ 26).

Mr. Salem reapplied to NYU for the Spring 2021 semester, "but was rejected due to his

GPA" of 2.6.  (ECF No. 28-1 ¶ 29).  He alleges that "D.S.", a "similarly situated . . . undergraduate

student from CUNY[,]" who was a "non-Iranian" United States citizen, "was granted a master[s]

admission to" Tandon's Robotics program.  (Id.)  Voltz told Mr. Salem "that he wanted to see [his]

GPA/Academic Record improve at another school to gain readmission[,]" which Mr. Salem

deemed to be "a very exceptional expectation."  (Id. ¶ 30).  Mr. Salem enrolled in an electrical

engineering Ph.D. program at CUNY, where he earned a GPA of 3.9.  (Id. ¶ 31).

Mr. Salem reapplied to NYU for the Fall 2022 semester, but, on January 28, 2022, was

rejected.  (Id. ¶¶ 31, 37–38).  Mr. Salem alleges that the rejection letter shows that Cooper and

Voltz rejected him "without sending [his] application to the Electrical Engineering Department."

(Id. ¶ 38).  In an email to Mr. Salem, Voltz stated:

---

[3] Pursuant to U.S. Department of Homeland Security regulations, on accepting a foreign student, a United States Student and Exchange Visitor Program-certified school issues to the student a certificate of eligibility for nonimmigrant student status on Form I-20.  See Student Forms, Dept. of Homeland Security, https://studyinthestates.dhs.gov/students/prepare/student-forms (last visited Sept. 13, 2023).  The Form I-20 is required for the student to apply for a visa, enter the United States, and apply for benefits.  Id.

> You had told me last February that you were transferring to another school and then would look forward to returning to Tandon. I had assumed you would be doing that to improve your academic record and then reapply to Tandon. It seems that you did not do that[.]

(Id. ¶ 40). Mr. Salem continued to pursue his Ph.D. in electrical engineering at CUNY, achieving a GPA of 3.5, but when he reapplied to NYU for Fall 2023, was rejected. (Id. ¶ 39).

### 3. Complaint to Dean

Mr. Salem complained to Dean Kovăcević "about his admission status and [] Voltz's decision impacting his future studies." (ECF No. 28-1 ¶ 21). In what Mr. Salem characterizes as "a retaliatory effort," Voltz sent Mr. Salem the following email:

> I am writing to respond to your recent communications to Dean Jelena Kovăcević, Deanna Rayment, and myself. To the extent there is any misperception on your part, please note that the financial hold on your account was not the only, or even the primary, impediment preventing you from registering this semester. Chiefly, you could not register because your application for readmission was denied by the ECE Department. As I explained to you last February, because you were discontinued as a student, you had to reapply to Tandon and then, assuming your application was successful, pay your outstanding balance in order to continue your studies here. While the fact that you recently paid your outstanding balance is appreciated, this does not entitle you to register for courses in light of the fact that your application for admission was denied. Please be advised that this will be the last communication from Tandon to you on this matter. I wish you the best in your future endeavors.

(Id. (the "Final Email")) Mr. Salem also asserts that "Defendants' hostility and retaliatory behaviors were reported to the university officials at N.Y.U." after one of the altercations with Cooper, "but there was little or no attempt from N.Y.U. to address these issues." (Id. ¶ 37).

### B. Procedural Background

On June 17, 2022, Mr. Salem filed the original complaint, asserting five claims against NYU, Cooper, and Voltz (together, the "Original Defendants"): (i) national origin discrimination under Title VI (the "Title VI Discrimination Claim"); (ii) national origin discrimination under

Section 1981 (the "Section 1981 Claim"); (iii) negligent supervision against NYU only (the "Negligence Claim"); (iv) national origin discrimination under the NYSHRL (the "NYSHRL Discrimination Claim"); and (v) national origin discrimination under the NYCHRL (the "NYCHRL Discrimination Claim," with the Title VI Discrimination Claim and the NYSHRL Discrimination Claim, the "Discrimination Claims"). (ECF No. 1 ¶¶ 31–59 (the "Complaint")). On September 7, 2022, the Original Defendants filed a motion to dismiss ((ECF Nos. 11–12 (the "MTD")), in response to which Mr. Salem withdrew the Section 1981 Claim and all claims against Cooper and Voltz. (ECF No. 18 at 8 n.2).

On April 28, 2023, the Court issued the R&R recommending that the Section 1981 and Negligence Claims and all claims against Cooper and Voltz be dismissed with prejudice, and that the Discrimination Claims against NYU be dismissed without prejudice and with leave to amend. See Salem I, 2023 WL 3509832, at *7. With respect to the Discrimination Claims, the Court found that Mr. Salem had "failed to provide 'plausible support [for] a minimal inference of discriminatory motivation.'" Id. at *4 (quoting Vega v. Hempstead Union Free Sch. Dis., 801 F.3d 72, 84 (2d Cir. 2015)); see id. at 6 n.5. Neither party objected to the R&R, and on May 17, 2023, Judge Caproni adopted the R&R in full, dismissed with prejudice the Section 1981 and Negligence Claims and all claims against Cooper and Voltz, dismissed without prejudice the Title VI, NYSHRL, and NYCHRL Claims, and set a deadline of June 16, 2023 for Mr. Salem to seek leave to amend and submit a proposed amended complaint. Salem II, 2023 WL 3506402, at *1. The Court subsequently extended the deadline to June 26, 2023. (ECF Nos. 24; 27).

On June 26, 2023, Mr. Salem filed the Motion, attaching the PAC. (ECF Nos. 28; 28-1). Despite the dismissal of the claims against Cooper and Voltz with prejudice, Mr. Salem continues

to list them in the caption of the PAC.  (ECF No. 28-1 at 1).  Mr. Salem has also added Selesnick

as a Defendant in the caption, but does not list him as one of the Defendants in the body of the

PAC.  (Compare id. at 1 with id. ¶¶ 9-11 (describing only NYU as a Defendant)).  The PAC re-asserts

the Discrimination Claims, and adds retaliation claims under Title VI (the "Title VI Retaliation

Claim"), the NYSHRL (the "NYSHRL Retaliation Claim"), and the NYCHRL (the NYCHRL Retaliation

Claim," with the Title VI Retaliation Claim and the NYSHRL Retaliation Claim, the "Retaliation

Claims").  (Id. ¶¶ 41–54).  On July 6, 2023, NYU opposed the Motion.  (ECF No. 30).

### III. DISCUSSION

#### A. Legal Standard for Motion to Amend

A court "should freely give leave" to amend a pleading "when justice so requires."  Fed.

R. Civ. P. 15(a)(2).[4]  The Rule encourages courts to determine claims "on the merits" rather than

disposing of claims or defenses based on "mere technicalities."  Monahan v. N.Y.C. Dep't of Corr.,

214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has explained that "district courts should

not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay,

prejudice to the opposing party, or futility."  Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir.

2000).  Courts in this District have held that denial of a motion to amend is appropriate where

"(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment

would be futile, or (4) the amendment would prejudice the opposing party."  Procter & Gamble

---

[4] Because no deadline for amendment of pleadings had been set, the Rule 15(a) standard applies.  See Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (explaining that, where motion to amend "is timely filed, only Rule 15's liberal standard governs"); see also Sacerdote v. N.Y. Univ., 9 F.4th 95, 115 (2d Cir. 2021) ("The period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted."), cert. denied, 142 S. Ct. 1112 (2022).

Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015); see McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."); see also Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as including "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

An amendment is futile "if the proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002); see Griffith-Fenton v. Coldwell Banker Mortg., No. 13 Civ. 7449 (VB), 2014 WL 6642715, at *1 (S.D.N.Y. Oct. 17, 2014). A complaint can survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To survive a motion to dismiss, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). In evaluating a motion to dismiss, the Court "accept[s] all facts alleged in the complaint as true and draw[s] all reasonable inferences in the plaintiff's favor." Sanderson v. Leg

Apparel LLC, No. 19 Civ. 8423 (GHW), 2020 WL 7342742, at *3 (S.D.N.Y. Dec. 14, 2020) (citing

Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008) (per curiam)).  The Court

is "not required to credit conclusory allegations or legal conclusions couched as factual

allegations."  Id. (quoting Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)).  "[A] complaint

that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement'

will not survive a motion to dismiss."  Id. (quoting Iqbal, 556 U.S. at 678).  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

"Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing

the amendment has the burden of establishing that leave to amend would be unduly prejudicial

or futile."  Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021

WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021).  The Court is mindful that "the submissions of a pro

se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they

suggest.'"  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon

v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).  Nonetheless, "a pro se plaintiff must still plead

enough facts to state a claim to relief that is plausible on its face."  Gottesfeld v. Anderson, No. 18

Civ. 10836 (PGG), 2020 WL 1082590, at *5 (S.D.N.Y. Mar. 6, 2020) (citing Hill v. Curcione, 657 F.3d

116, 122 (2d Cir. 2011)).  Despite the obligation "to draw the most favorable inferences" from a

complaint, the Court "cannot invent factual allegations that [a pro se plaintiff] has not pled."

Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).

**B.  Title VI Discrimination and Retaliation Claims**

In support of his Title VI Discrimination Claim, Mr. Salem contends that NYU was

"deliberately indifferent and subject[ed] him to a hostile educational environment and disparate

treatment" based on his Iranian national origin.  (ECF No. 28-1 ¶¶ 43–44).  He asserts that NYU's actions deprived him of "a supportive, scholastic environment free of discrimination and harassment" and "the ability to complete his education."  (Id. ¶ 45).  In opposition to the Motion, NYU argues that amendment would be futile because Mr. Salem has not cured the deficiencies the Court highlighted in the R&R and still "fail[s] to state any facts from which one could infer discriminatory intent or motivation on the part of NYU."  (ECF No. 30 at 9).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  To establish a discrimination claim under Title VI, a "plaintiff must show, inter alia, that the defendant discriminated against him on the basis of [national origin], that the discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions."  Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001).

Title VI claims "are subject to the burden-shifting framework" that the United States Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Johnson v. N.Y. Univ., No. 17 Civ. 6184 (VEC) (GWG), 2018 WL 3966703, at *6 (S.D.N.Y. Aug. 20, 2018) ("Johnson I"), adopted by, 2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018) ("Johnson II"); see Lopez v. Webster Cent. Sch. Dist., 682 F. Supp. 2d 274, 279 (W.D.N.Y. 2010) ("Courts have applied the familiar McDonnell Douglas burden-shifting analysis to cases arising under Title VI."); accord Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170 (GEL), 2007 WL 840115, at *7 n.10 (S.D.N.Y. Mar. 19, 2007).  The first step of that framework requires a plaintiff to "successfully assert[] a

prima facie case of [] discrimination against" the defendant. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004).

To establish a prima facie case of national origin discrimination in an educational setting, a plaintiff must allege either "direct evidence of discriminatory conduct," or, absent such evidence, that "(1) []he is a member of a protected class; (2) []he suffered an adverse action in pursuit of h[is] education by defendant; (3) []he was treated differently from similarly situated students who are not members of the protected class; and (4) []he was qualified to continue in h[is] educational pursuit." Koumantoros, 2007 WL 840115, at *8. If a plaintiff states a prima facie case, "defendants have the burden of showing a legitimate, nondiscriminatory reason for their actions." Back, 365 F.3d at 123. If the defendant does so, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

To plead a retaliation claim under Title VI, "a plaintiff must plausibly allege: (1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action." Bloomberg v. N.Y.C. Dep't of Educ., No. 17 Civ. 3136 (PGG), 2023 WL 1927825, at *4 (S.D.N.Y. Feb. 10, 2023); see Verdi v. City of New York, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018).

With respect to the Discrimination Claims, the Court concludes that in the PAC, Mr. Salem still fails to provide "plausible support [for] a minimal inference of discriminatory motivation." Vega, 801 F.3d at 84. In the PAC, he continues to plead, at most, "facts that are 'merely consistent

with' [NYU's] liability," which "stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Mr. Salem alleges that he is Iranian, and that he applied for and was denied readmission to NYU. (ECF No. 28-1 ¶¶ 5, 9, 29, 37–39). What he has not alleged, however, is "some basis on which this Court may infer that the reason he was denied readmission was because of his [national origin] . . . ." Johnson, 2018 WL 3966703, at *7 (emphasis added). Absent such allegations, Mr. Salem has not crossed the plausibility threshold. Twombly, 550 U.S. at 554, 557; see Bhatnagar v. Parsons Sch. of Design, No. 20 Civ. 2321 (LGS), 2021 WL 2333243, at *3 (S.D.N.Y. June 8, 2021) ("Although the Complaint's factual allegations do not rule out a discriminatory motive, they do not 'nudge [the Complaint's] claims across the line from conceivable to plausible.") (quoting E.E.O.C. v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014)); cf. Radar Sports Mgmt., LLC v. Legacy Lacrosse, LI Inc., No. 21 Civ. 5749 (JMW), 2023 WL 2632461, at *8 (E.D.N.Y. Mar. 24, 2023) (granting motion to dismiss race discrimination that "suffer[ed] from a common (and patently defective) pleading technique in cases brought under federal and antidiscrimination statutes: 'I am (fill in the protected class of which the plaintiff is a member); something bad happened to me []; therefore the bad thing happened because I am (fill in the protected class). As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination.").

The Court reaches this conclusion for three reasons. First, Mr. Salem has not advanced any non-conclusory allegation that NYU denied his applications for readmission "based on" his national origin or any other protected characteristic. Johnson, 2018 WL 3966703, at *7. To show that he was treated differently in the readmission process, he repeats his allegations concerning

another student, D.S., who was a United States citizen, had a GPA of 2.5, and "was granted a master[s] admission to NYU Tandon Robotics program for Fall 2021." (Compare ECF No. 1 ¶ 21 with ECF No. 28-1 ¶ 29). As the Court explained with respect to the Complaint, however, the PAC continues to lack allegations that "D.S. is a student who previously attended NYU, was terminated due to poor academic performance, and re-applied for admission to the same program to which Mr. Salem applied." Salem I, 2023 WL 3509832, at *5. The PAC still fails to allege that D.S., an applicant with a low GPA seeking admission for the first time, "was similarly situated in all material respects to" Mr. Salem, an applicant reapplying to NYU after being terminated for a low GPA. Id. Accordingly, Mr. Salem's assertion that D.S. is a "similarly situated" comparator remains insufficient to "support an inference of discrimination." Johnson II, 2018 WL 4908108, at *7 (holding that plaintiff's comparator allegations did not support inference of race or sex discrimination where there was "obviously an enormous difference" between plaintiff, who sought readmission after being expelled, and the suggested comparators, who were never expelled); see Bhatnagar, 2021 WL 2333243, at *4 (dismissing Title VI and NYSHRL claims where the plaintiff failed to allege "facts that plausibly support finding [him] similarly situated to the students who received thesis extensions").

Second, the Court previously found that none of the statements by Cooper or Voltz supported an inference of discriminatory motivation, and the PAC does not allege any additional statements by either of them that would change that conclusion. See Salem I, 2023 WL 3509832, at *5. The PAC does contain a new allegation that Voltz, in Mr. Salem's presence, told a Student Affairs staffer that Mr. Salem "is Iranian[,]" and that Voltz "knew that getting a visa for Iranian statements is difficult." (ECF No. 28-1 ¶ 19). Mr. Salem claims that Voltz's statement is evidence

that "[D]efendants tried to weaponize this visa difficulty against [him]" to "impos[e] their terms and discriminatory treatments." (Id.)  This "conclusory, isolated, and unspecified statement[,]" however, "cannot provide a rational basis for inferring discriminatory intent or motivation, and a claim based on such allegations cannot survive a motion to dismiss." Aoutif v. City Univ. of N.Y., No. 05 Civ. 496 (ILG), 2005 WL 3334277, at *4 (E.D.N.Y. Dec. 8, 2005) (granting motion to dismiss Title VI claim); see Bhatnagar, 2021 WL 2333243, at *4 (finding that any inference of motivation based on national origin and skin color was conclusory and that the "Complaint contain[ed] no factual allegations that ma[de] this inference of discriminatory intent plausible[]").   To the contrary, Mr. Salem admits that NYU provided him with the requisite Form I-20 (ECF No. 28-1 ¶¶ 23, 33), and therefore has not plausibly shown that Voltz's statement that Mr. Salem "is Iranian" bore any connection to mistreatment by NYU.   See Hernandez v. N.Y.C. Dep't of Sanitation, No. 18 Civ. 1808 (LGS), 2018 WL 5447540, at *3 (S.D.N.Y. Oct. 29, 2018) (dismissing race discrimination claim where plaintiff failed to allege any facts plausibly showing that his alleged mistreatment was racially motivated).  Furthermore, the emails from Voltz quoted in the PAC, which discuss the denial of his application for readmission based on his academic record, prevent any plausible inference that Mr. Salem's Iranian national origin was the motivation for NYU's decision to deny his applications for readmission.  (ECF No. 28-1 ¶¶ 21, 40).  See Kajoshaj v. N.Y.C. Dep't of Educ., 543 F. App'x 11, 14 (2d Cir. 2013) (summary order) (affirming dismissal of national origin and religious discrimination claim where plaintiffs acknowledged reports showing that they did not achieve grades necessary for promotion); Bhatnagar, 2021 WL 2021 WL 2333243, at *3 (dismissing race discrimination claim where complaint included "statements

supporting the inference that the reason for Defendant's conduct was its fear about Plaintiff's mental stability and not any racial animus").

Third, Mr. Salem's new allegation that he "complained" to Dean Kovačević about his "admission status" and "Voltz's decision" (ECF No. 28-1 ¶ 21), fails to support a plausible inference that he notified NYU officials that he was being discriminated against because of his national origin and that NYU failed to respond.  "Noticeably absent" from his communication to Dean Kovačević is "any suggestion" that he was denied readmission based on his national origin, and therefore, NYU "cannot be charged with notice of an alleged violation."  Manolov v. Borough of Manh. Comm. Coll., 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013) (dismissing Title VI discrimination claim where allegations that plaintiff wrote "letters" and "saw the Dean personally" were insufficient to put college on notice of race or gender discrimination).  In the absence of allegations giving rise to a plausible inference that NYU had actual knowledge of national origin discrimination against Mr. Salem, if it occurred, and deliberately failed to respond, his Title VI Claim cannot survive dismissal.  Aoutif, 2005 WL 3334277, at *4; see Dayes v. Watertown City Sch. Dist., No. 5:20-CV-964 (GLS/ML), 2021 WL 4407385, at *7 (N.D.N.Y. Sept. 27, 2021) (dismissing Title VI claim where allegations of, inter alia, "grossly inadequate supervision" failed to establish that school district "acted with deliberate indifference, or that any of its actions were driven by [plaintiffs'] race, or that such actions were so severe, pervasive, and objectively offensive . . ."); Shore v. Mirabilio, No. 16 Civ. 2078 (VLB) , 2019 WL 13293059, at *9–10 (D. Conn. Mar. 8, 2019) (dismissing Title VI claim where generalized references to "complaints" and "conclusory statements" about educational institution's "knowledge of [] discriminatory behavior" failed to plausibly allege actual knowledge or deliberate indifference).

Similarly, Mr. Salem's Title VI Retaliation Claim fails as a matter of law because he fails to plausibly allege that his complaint to Dean Kovăcević constituted protected activity.  Because the PAC does not allege that Mr. Salem complained to Dean Kovăcević "regarding [his] purported belief that Defendants were discriminating against [him]" based on his national origin, his complaint does not amount to protected activity.  Ikedilo v. Statter, No. 19 Civ. 9967 (RA), 2020 WL 5849049, at *10 (S.D.N.Y. Sept. 30, 2020) (dismissing Title VI retaliation claim for failure to allege protected activity); see Rafi v. Yale Univ. Sch. of Med., No. 3:14-CV-01582 (VAB), 2017 WL 3205548, at *11 (D. Conn. July 27, 2017) (dismissing Title VI retaliation claim for lack of protected activity where the plaintiff fail to "allege that he participated in activities that opposed any perceived discrimination on the basis of race or national origin").  Even if Mr. Salem's statement to Dean Kovăcević constituted protected activity, the Title VI Retaliation Claim also fails as a matter of law because Voltz's Final Email was, at most, a curtly worded restatement of NYU's decision not to grant Mr. Salem readmission, which preceded his complaint to Dean Kovăcević, and therefore, was not an adverse action causally connected to any protected activity.  See Shore v. Mirabilio, No. 3:16-CV-2078 (VLB), 2019 WL 13293059, at *18 (D. Conn. Mar. 8, 2019); see also Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("[W]here timing is the only basis for a claim of retaliation, and gradual adverse [] actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not exist."); Johnson I, 2018 WL 3966703, at *8 (finding that plaintiff failed to plausibly allege retaliation claim where he "alleged no facts suggesting a causal connection, either directly or indirectly, between the filing of his lawsuit and the denial of his application for readmission").

Finally, to the extent that Mr. Salem seeks to add Selesnick as a Defendant by adding him to the caption and alleging that Selesnick told him that Tandon had "an agreement with [USCIS] to not keep master's students for more than 2 years[,]" I respectfully recommend that this request be denied as futile as well.  (ECF No. 28-1 ¶ 22).  It is well-settled that Title VI does not permit claims against education officials in their individual capacities.  See Strujan v. Teachers Coll. Columbia Univ., No. 08 Civ. 9589 (WHP) (HBP), 2010 WL 3466301, at *11 (S.D.N.Y. Aug. 11, 2010) (collecting cases), adopted by, 2010 WL 3466251 (S.D.N.Y. Sept. 3, 2010).  To the extent Mr. Salem seeks to name Selesnick in his official capacity, even if Title VI recognized such a claim, Selesnick's statement—whether in isolation or combined with other allegations in the PAC—does not plausibly allege national origin discrimination under Title VI.  See Strujan, 2010 WL 3466301, at *11 (noting "conflicting authority concerning whether claims against individuals in their official capacities are properly brought" under Title VI but recommending dismissal "because plaintiff's allegations [did] not otherwise state a claim under the statute"); see also Bhatnagar, 2021 WL 2333243, at *4 (finding that "conclusory" allegations lacked factual support to make an "inference of discriminatory intent plausible").

*          *          *

In conclusion, Mr. Salem asks the Court to infer from the PAC that NYU discriminated and retaliated against him based on his Iranian national origin "based merely on the fact that he was the subject of an adverse action[,]" which is a "logic [that] has been routinely rejected" by courts in the Second Circuit.  Johnson I, 2018 WL 3966703, at *8 (collecting cases).  In the PAC, however, Mr. Salem "makes no non-conclusory allegation that [NYU] denied his application for readmission based on his [national origin]" or acted with retaliatory motive.  Id.  Because Mr. Salem has failed

18

to allege facts supporting a minimal inference of discrimination or to suggest he engaged in protected activity, he has failed to state a plausible claim for national origin discrimination or retaliation under Title VI, such that allowing the PAC would be futile.  I therefore respectfully that the Motion be DENIED as to the Title VI Discrimination and Retaliation Claims.[5]

### C.  Dismissal with Prejudice

Because Mr. Salem has already had an opportunity to amend to address the pleading deficiencies highlighted in Salem I, I further recommend that the Court dismiss Mr. Salem's Title VI Discrimination and Retaliation Claims with prejudice and without further leave to amend.  See TechnoMarina SA v. Giftpowers, Inc., 758 F.3d 493, 506 (2d Cir. 2014) (upholding dismissal of amended complaint with prejudice where, following motion to dismiss for failure to state a claim, plaintiff had already amended complaint once and failed to "resolve its pleading deficiencies"); Tsinberg v. New York, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *12 (S.D.N.Y. Mar. 25, 2021) (dismissing pro se plaintiff's claims with prejudice and without leave to amend where he "already had one opportunity to amend, and did so after" being made aware of pleading deficiencies); Adams-Flores, 2021 WL 918041, at *5 (denying leave to amend where plaintiff had prior opportunity to remedy defects court previously highlighted); Avillan v. Brennan, No. 16 Civ. 5611 (AJN) (RLE), 2018 WL 4680027, at *6 (S.D.N.Y. Sept. 28, 2018) (denying leave to amend where plaintiff "[had] already had the opportunity to amend his complaint to address the pleading

---

[5] The Court notes that, like the Complaint, the introductory paragraphs of the PAC also include passing references to religious discrimination (see ECF No. 28-1 ¶¶ 2, 4), although, other than alleging that he is Muslim (id. ¶ 5), Mr. Salem does not otherwise detail the basis for a religious discrimination claim.  (See id. ¶¶ 31–59).  To the extent Mr. Salem intended to assert a claim for religious discrimination, the Court finds that this claim fails for the same reason as his national origin claim, i.e., because Mr. Salem has failed to allege facts supporting a minimal inference of discrimination.

deficiencies identified by the Court in [its] prior opinion, but [had] been unable to do so").  The substantive deficiencies in the PAC "are such that a third attempt to state a viable claim would be futile." Tsinberg, 2021 WL 1146942, at *12; see De'Bey v. City of New York, No. 20 Civ. 1034 (PGG) (SLC), 2021 WL 8013765, at *20 (S.D.N.Y. Oct. 26, 2021) (recommending dismissal of certain claims with prejudice and without leave to amend where pro se plaintiff had "already amended his pleading twice [] and, given the Court's analysis of the substantive deficiencies in each of his claims . . . the Court [was] not persuaded that another attempt to state a viable claim would be successful"), adopted by, 2022 WL 909790 (S.D.N.Y. Mar. 29, 2022); Binn v. Bernstein, No. 19 Civ. 6122 (GHW) (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases denying plaintiffs a "third bite at the apple"), adopted by, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020).

### D.  NYSHRL and NYCHRL Claims

Mr. Salem predicates his NYSHRL and NYCHRL Discrimination and Retaliation Claims on the same conduct as his Title VI Discrimination and Retaliation Claims.  (ECF No. 28-1 ¶¶ 47–54). While the Court has jurisdiction over Mr. Salem's Title VI Claims pursuant to 28 U.S.C. § 1331, "the Court's authority to hear [his] state law claims is premised on its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)," Johnson I, 2018 WL 3966703, at *9, as Mr. Salem acknowledges. (ECF No. 28-1 ¶ 6).  Section 1367(a) provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all claims that are so related to claims in the action within such original jurisdiction that the form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  A district court may "decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Having recommended dismissal of Mr. Salem's federal claims, I respectfully recommend that the Court decline to exercise jurisdiction over Mr. Salem's NYSHRL and NYCHRL Claims. See Salem I, 2023 WL 3509832, at *6; Johnson I, 2018 WL 3966703, at *9 (recommending abstention from supplemental jurisdiction over NYSHRL, NYCHRL, and other state law claims), adopted by, 2018 WL 4908108, at *7; accord Manolov v. Borough of Manh. Commt'y Coll., 952 F. Supp. 2d 522, 527, 536–37 (S.D.N.Y. 2013); Sanders v. Grenadier Realty, Inc., No. 08 Civ. 3920 (WHP), 2009 WL 1270226, at *3 (S.D.N.Y. May 6, 2009).[6]

### IV. **CONCLUSION**

For the reasons set forth above, I respectfully recommend that Mr. Salem's Motion be DENIED as follows:

1. The Title VI Discrimination and Retaliation Claims be DISMISSED WITH PREJUDICE; and

2. The Court decline to exercise supplemental jurisdiction over Mr. Salem's NYSHRL and NYCHRL Claims.

Dated:       New York, New York
             September 15, 2023

_Sarah Cave_

**SARAH L. CAVE**
**United States Magistrate Judge**

---

[6] Although NYU does not raise this issue, the Court notes that Mr. Salem's NYSHRL and NYCHRL Claims do not appear to be cognizable.  See Weiss v. City Univ. of N.Y., No. 17 Civ. 3557 (VSB), 2019 WL 1244508, at *11 (S.D.N.Y. Mar. 18, 2019) ("The statutory protections set forth in . . . the NYSHRL[] and the NYCHRL relate to discrimination in employment and/or housing and do not apply to the academic admissions process.").

*                    *                    *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).   A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Mr. Salem does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from NYU's counsel.  See Local Civ. R. 7.2.